UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CASIMIR SIKORA,                )
                              )
            Plaintiff          )
                              )
      v.                       )      CASE NO. 3:06-CV-736RM
                              )
HONEYWELL INTERNATIONAL,       ]
INC.,                          )
                              )
            Defendant          )

OPINION and ORDER

This cause is before the court on the motion of Honeywell International, Inc. for summary judgment on Casimir Sikora's claims against it. Mr. Sikora claims that while employed by Honeywell, he was discriminated against based on his age and sex when Honeywell refused to promote and/or transfer him to positions for which he was qualified and terminated his employment in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.,* and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*[1] For the reasons that follow, the court grants Honeywell's summary judgment motion.

I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are viewed in the light most favorable to Mr. Sikora, the nonmoving party. Honeywell

---

[1] In his response in opposition to Honeywell's motion for summary judgment, Mr. Sikora abandoned his claims for violation of his rights relating to Honeywell's retirement plan.

is an international corporation engaged in the business of manufacturing aerospace products and services, control technologies for buildings, homes, and industries, automotive products, turbo chargers, and specialty materials. Honeywell's predecessor, AlliedSignal, first hired Mr. Sikora on August 8, 1988 to work in its Bendix division in South Bend, Indiana. Mr. Sikora continued working at the South Bend location until he was terminated on September 14, 2005, when he was 57 years old.

### A. Pre-2005 Job Performance and Employment Decisions

Honeywell first hired Mr. Sikora as a Manager of Contracts, responsible for negotiating, preparing, reviewing, and approving contracts with customers. In September 1993, Honeywell promoted Mr. Sikora to Senior Manager of Contracts, and in 1995, he became Leader of Contracts Services, which included responsibility for contracts services for an entire program. In November 1996, Honeywell named Mr. Sikora Program Manager for Pratt & Whitney programs, and in 1999, he was appointed Manager of Contracts for the engine controls product line. In 2001, Mr. Sikora applied for and was offered the position of Manager of Marketing for the Ground Support Equipment Group, but he says he wasn't allowed to accept the position because his supervisor had no one to replace him.

During the course of Mr. Sikora's employment, various supervisors evaluated his performance. According to Mr. Sikora, he consistently received an overall ranking of "exceeds standards" until Honeywell stopped providing overall

2

ratings on annual reviews. Mr. Sikora claims that starting in 2000, Honeywell mandated that performance reviews include at least two "Needs Development" ratings, signifying that development was required for advancement beyond the current position. On February 5, 2003, one of his supervisors, Wendy Franz, prepared a Continuous Improvement Summary ("CIS") for Mr. Sikora, which listed numerous areas in which he could improve. Ms. Franz noted that Mr. Sikora needed to "be more proactive in generating new ideas for productivity improvements, increased customer satisfaction and eliminating non-value added work." Ms. Franz and Mr. Sikora later met to discuss the CIS.

In late 2003, Honeywell reorganized its Engine Systems & Accessories business enterprise into two platforms. As a result of the reorganization, Ms. Franz placed Diane Link, a female born in 1961, and Sabine Flannery, a female in her thirties, in Manager of Contracts positions. Mr. Sikora previously held the same position as Ms. Link and Ms. Flannery but was demoted to Contract Manager, even though he contends that he had twenty-five years of supervisory and contracts experience while Ms. Link and Ms. Flannery did not. Mr. Sikora claims that Ms. Franz told him that Ms. Link and Ms. Flannery had "higher potential" and were "more adaptable to change." Mr. Sikora retained the same rate of pay in the Contract Manager position, but his responsibilities were reduced and supervisory duties eliminated.

Also in late 2003, Mr. Sikora claims that Honeywell created two new Senior Contract Manager positions, but he wasn't considered for either position.

3

Honeywell contends Ms. Franz merely revised the position titles, describing Mr. Sikora and Ms. Flannery as Contract Managers and Ms. Link and Gary Held as Senior Contract Managers. Once again, Mr. Sikora's pay didn't change, but he contends that had he retained the Manager of Contracts position, or been named a Senior Contract Manager, he would have been eligible for a larger merit-based salary increase in 2005. Mr. Sikora sent an email to Ms. Franz asking why he hadn't been placed in a Manager of Contracts position or rated as a Senior Contract Manager. Ms. Franz then met with Mr. Sikora and Human Resources representative Tricia Hertz to discuss Mr. Sikora's potential areas of improvement as well as a communication plan for the future.

In mid-2004, Ms. Link was promoted to Director of Contracts and became Mr. Sikora's direct supervisor. As a result of Ms. Link's promotion, a vacancy came open for her Senior Contract Manger position at Honeywell's Tempe, Arizona facility. Mr. Sikora applied for the position but was not granted an interview. Ms. Link instead selected Debbie Herbert, a female located in Tempe, to fill the position.

In February 2005, Ms. Link evaluated Mr. Sikora's performance and identified "Fosters Teamwork & Diversity" and "Effective Communicator" as areas in which he was below Honeywell standards. On the evaluation, Ms. Link asked Mr. Sikora to "please focus on teamwork and communication in 2005, which will significantly enhance your performance." Ms. Link also identified the following areas as below standards: "Develop a team approach to negotiations, rather than

4

working alone – Improve on communication with management and peers – Look for opportunities to improve processes in the area of transactions."

## B. 2005 Reorganization and Hiring Decisions

In July 2005, the Honeywell Vice President of Contracts for the Aerospace Division Harriet Mountcastle-Walsh, announced that the Aerospace legal and contracts organization was undergoing a reorganization and reduction-in-force. As part of the reorganization, Ms. Link and Robert Peak, then Contracts Director for another unit, were informed that they needed to eliminate two employees under their direct supervision. Honeywell says Ms. Link and Mr. Peak evaluated their combined unit and identified Mr. Sikora and Michelle Freeman, a female born in 1972, as the weakest employees. Mr. Sikora disagrees, alleging that Ms. Link noted in his 2004 CIS that he had "[s]trong technical knowledge in Contracts & Program Management" and is "[s]elf motivated [and w]orks with little or no supervision." Mr. Sikora also claims that Mr. Peak wasn't his direct supervisor, so his evaluation couldn't have been based on personal observation.

Moreover, Mr. Sikora says that he received the highest ranking in a resume scoring exercise undertaken by Honeywell as part of the 2005 reorganization, which ranked candidates based on eight objective criteria. Honeywell responds that the resume matrix wasn't considered in Ms. Link's or Mr. Peak's termination recommendations. Instead, Honeywell asserts it prepared the resume matrix for use with the reorganization job postings, and Ms. Flannery gave Mr. Sikora the

5

lowest possible score on the "observed leadership" column of the matrix based on her knowledge of a situation where Mr. Sikora damaged a customer relationship and used poor judgment. Mr. Sikora disagrees, arguing that Ms. Flannery wasn't present during his dealings with customers, never directly supervised him, or had an opportunity to observe his work. As such, Mr. Sikora maintains that Ms. Flannery had no first-hand knowledge of his performance, and to his belief, no customer relationship incident ever occurred.

During the course of the reorganization, Mr. Sikora applied for numerous positions both within and outside the contracts department but was granted only one interview. Although Mr. Sikora lists numerous positions for which he applied in his complaint, he challenges only four specific hiring decisions in his response in opposition to Honeywell's motion for summary judgment: (1) Contracts Director- Surface & Helicopters, Defense & Space (one position available); (2) Contracts Director- Business and General Aviation Transactions and Contracts Director- ATR OEM Transactions (one position available); (3) Director- ATR & BGA Commercial Contract Management (two positions available); and (4) Senior Contract Manager- ATR Contract Management (three positions available).

Vincent Trim acted as the hiring manager for the position of Contracts Director- Surface & Helicopters, Defense & Space. Mr. Sikora never worked directly for Mr. Trim, but Mr. Trim signed one of Mr. Sikora's performance reviews as a second level manager. After reviewing the candidates for the position, Mr. Trim chose Carl Kotlarz, a male born in 1966, for the position. Mr. Trim previously

6

worked with Mr. Kotlarz on various projects and was impressed with his abilities in managing contracts. Mr. Trim was also familiar with Mr. Kotlarz's performance as a second level manager. According to Honeywell, Mr. Trim determined that Mr. Sikora's supervisory skills, experience, and performance were not at the same level as other candidates and declined to interview Mr. Sikora. Mr. Sikora claims that Mr. Trim had no personal knowledge regarding his supervisory abilities and was acting based on information provided by his direct supervisor, Diane Link, who held animus towards him because of his age and sex.

Mr. Trim also was the hiring manager for the Contracts Director- Business and General Aviation Transactions and Contracts Director- ATR OEM Transactions positions, which were rolled into one after the 2005 reorganization. Mr. Trim selected Robert Peak, a male born in 1961, for the position. Mr. Peak previously reported directly to Mr. Trim, and Mr. Trim believed that Mr. Peak was a strong performer and had appropriate legal skills. As with the other Contracts Director positions, Honeywell claims that Mr. Sikora's skills, experience, and performance weren't at the level of other candidates, so Mr. Trim declined to interview him for the position.

Mr. Trim filled the Director, ATR & BGA Commercial Contract management openings with Ms. Link and Eric Sorber, a male born in 1960. Ms. Link and Mr. Sorber both worked under Mr. Trim's direct supervision in Phoenix, and Mr. Trim considered them to be strong performers. Mr. Trim didn't interview Mr. Sikora for either position.

Mr. Sikora also applied for the position of Senior Contract Manager- ATR Contract Management, for which there were three openings. Ms. Link acted as the hiring manager for these positions and selected Jay Felkins, a male born in 1967, Darcelle Ioli, a female born in 1953, and Donna Synder, a female born in 1963. All three individuals previously worked for Ms. Link in the Phoenix area, and Ms. Link claims that she believed these individuals would perform better as Senior Contract Managers than Mr. Sikora. Mr. Sikora contests this decision, pointing out that he scored higher on the resume matrix than Mr. Felkins, Ms. Ioli, and Ms. Synder.

*C. Mr. Sikora's Termination*

Following the reorganization, Ms. Link and Human Resources Representative Barb Packard met with Mr. Sikora and notified him that his employment was being terminated. Honeywell maintains that Ms. Link told Mr. Sikora that his position was eliminated in the course of the reduction in force. Honeywell also says Ms. Packard provided Mr. Sikora with information about a severance package, but Mr. Sikora elected early retirement instead. Honeywell alleges that since his termination, Mr. Sikora hasn't sought further employment nor does he intend to become employed again in the future.

*D. Procedural History*

On December 19, 2005, Mr. Sikora filed a charge of discrimination with the

EEOC, complaining that he was treated in a discriminatory manner because of his age and sex. The EEOC issued a notice of right to sue, and Mr. Sikora filed his complaint seeking compensatory relief, reinstatement to his former position or front pay in lieu thereof, liquidated damages, punitive damages, fees, costs, and pre- and post-judgment interest on all sums recoverable. While Mr. Sikora argues that Honeywell discriminated against him and terminated him based on age and sex, Honeywell contends that it failed to transfer or promote Mr. Sikora because other applicants were better qualified and that it eventually terminated his employment as a result of the reduction in force which eliminated his position.

## II. DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). A nonmoving party cannot rest on mere allegations or denials to overcome

a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986); Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004).

### A. Pre-2005 Employment Decisions

Honeywell argues that Mr. Sikora's claims that he was discriminated against in 2003 and 2004 weren't filed within the applicable limitations periods or properly pleaded under a continuing violation theory and so are time-barred. Both Title VII and the ADEA require plaintiffs to meet strict deadlines as to when EEOC charges must be filed after the alleged incident of discrimination. Gaines v. White River Envtl. P'ship, 66 Fed. Appx. 37, 38 (7th Cir. 2003). In Indiana, EEOC charges must be filed within 300 days of the alleged incident of sex discrimination, and within 180 days of the alleged incident of age discrimination, or the charge is untimely. See EEOC v. N. Gibson Sch. Corp., 266 F.3d 607, 617 (7th Cir. 2001) (ADEA); Minor v. Ivy Tech State College, 174 F.3d 855, 857 (7th Cir. 1999) (Title VII). Under the continuing violation doctrine, a plaintiff may obtain relief for a time-barred act of discrimination if he can link it with acts that fall within the statutory limitations period. See Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1003 (7th Cir. 2000); Filipovic v. K & R Exp. Sys., Inc., 176 F.3d 390, 396-397

(7th Cir. 1999) (explaining that the court will treat the series of continuing violations as one continuous act ending within the limitations period). The continuing violation doctrine doesn't apply when the time-barred incident alone should have triggered the plaintiff's awareness that his rights had been violated. *See* Simpson v. Borg-Warner Auto, Inc., 196 F.3d 873, 875-876 n.1 (7th Cir. 1999).

Mr. Sikora claims that he was discriminated against based on his sex and age when demoted to Contract Manager and not selected for a Senior Contract Manager position in 2003 and when Ms. Link failed to promote him to the vacant Manager of Contracts position in 2004. While Mr. Sikora never filed EEOC charges relating to the 2003 and 2004 employment decisions, he now argues that he properly pleaded a continuing violation theory in his EEOC charge, filed on December 19, 2005. Mr. Sikora alleges that Honeywell's conduct was so covert that he had no reasonable basis to believe that the 2003 and 2004 decisions were based on his age or sex until after he was denied promotions to numerous positions and was then terminated.

Assuming Mr. Sikora could show that the 2003 and 2004 acts were closely related enough to Honeywell's 2005 reorganization decisions to be considered one ongoing violation, its conduct was not so covert that he couldn't have been aware that he was the victim of unlawful discrimination. Mr. Sikora contacted counsel and provided information about his case in 2003 but decided not to file suit. It is apparent that Mr. Sikora believed that he was the victim of discrimination years

before he filed his charge with the EEOC, precluding invocation of the continuing violation doctrine to save his untimely claims. *See* Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999) (holding that when "it is evident long before the plaintiff sues that [he] was the victim of actionable harassment, [he] cannot reach back and base [his] suit on conduct that occurred outside the statute of limitations.") (citation omitted).

Moreover, Mr. Sikora hasn't presented enough evidence of discriminatory motivation to create a genuine issue of fact for trial. Title VII prohibits employers from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's. . . sex." 42 U.S.C. § 2000e-2(a)(1). Likewise, the ADEA similarly prohibits workplace discrimination based on an individual's age. 29 U.S.C. § 623(a)(1). Mr. Sikora has two means of proving his discriminations claims under Title VII and the ADEA: (1) by presenting evidence under the direct method of proof that his age and/or sex were determinative in Honeywell's pre-2005 employment decisions; or (2) by employing the indirect, burden-shifting method of proof. *See* Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006); Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

To succeed under the direct method, Mr. Sikora must present evidence sufficient to point directly to a discriminatory reason for Honeywell's decision to demote him and subsequently not place him in a Senior Contract Manager or Manager of Contracts position. Ptasznik v. St. Joesph's Hosp., 464 F.3d 691, 695

(7th Cir. 2006); *see also* Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000). Mr. Sikora offers no evidence of an acknowledgment of discriminatory intent on the part of Honeywell nor circumstantial evidence which would establish that he wouldn't have been demoted or passed over but for his age and/or sex. Accordingly, Mr. Sikora must proceed under the indirect method of proof. *See* Gorence v. Eagle Food Ctrs., Inc., 242 F.3d 759, 762 (7th Cir. 2001).

Mr. Sikora may establish a prima facie case of discrimination under the indirect method by demonstrating that: (1) he is a member of a protected class; (2) he was meeting Honeywell's legitimate expectations; (3) he suffered an adverse employment action; and (4) Honeywell treated other similarly situated employees who were not members of the class more favorably. Goodwin v. Bd. of Trustees of Univ. of Ill., 442 F.3d 611, 617 (7th Cir. 2006); *see also* Krchnavy v. Limagrain Genetics Corp., 294 F.3d 871, 875 (7th Cir. 2002) (holding that the indirect burden-shifting method applies to both Title VII and ADEA claims). Such a showing would shift the burden to Honeywell to articulate a legitimate nondiscriminatory reason for its decisions. Herron v. DaimlerChrysler Corp., 388 F.3d 293, 299 (7th Cir. 2004). If Honeywell points to such a reason, Mr. Sikora bears the ultimate burden to show that Honeywell's proffered reason is a pretext for racial and/or age-based discrimination. Id.

Mr. Sikora satisfies the first prong of the prima facie test — he is a member of two protected classes, based on his sex and age. His demotion and subsequent rejection from applied for positions qualify as adverse employment actions. Neither

Mr. Sikora nor Honeywell make reference to the performance prong in their arguments in regard to the pre-2005 employment decisions, but Mr. Sikora generally disputes Honeywell's conclusion that he wasn't performing up to its expectations.

Assuming Mr. Sikora could prove that he was performing satisfactorily, he also must point to a similarly situated individual who received more favorable treatment but wasn't a member of one of the protected classes. Mr. Sikora notes that Ms. Flannery and Ms. Link, both younger females, were given Manager of Contracts positions while he was demoted, but he hasn't come forward with evidence that either of these individuals is "directly comparable in all material respects." Grayson v. O'Neill, 308 F.3d 808, 819 (7th Cir. 2002). Similarly, Mr. Sikora contends that Ms. Link selected Ms. Herbert over him for the position of Senior Contract Manager in 2004 because she was a female, but he hasn't provided any information regarding Ms. Herbert's prior job experience or qualifications. Mr. Sikora must demonstrate that another employee "occupied the same job level and engaged in similar past misconduct, but as a result of [the] misconduct [the employee] was treated differently (*i.e.*, more favorably) for no legitimate reason." Jordan v. City of Gary, 396 F.3d 825, 834 (7th Cir. 2005). Mr. Sikora hasn't pointed to such an individual, so he cannot fulfill the elements of a prima facie case of discrimination.

If Mr. Sikora could establish a prima facie case, Honeywell produced sufficient evidence to support a nondiscriminatory reason for its employment

decisions. Honeywell maintains that it based its pre-2005 employment decisions on the fact that other individuals were more qualified for the positions at issue. To show that Honeywell's proffered reason is a pretext for discrimination, Mr. Sikora must demonstrate that Honeywell gave a dishonest explanation for its actions. *See* Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000) (pretext "means something worse than a business error; pretext means deceit used to cover one's tracks."). If Honeywell's decisions were in good faith, the court can't second-guess them regardless of whether or not the court believes those actions were correct. *See* Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir. 1999) (holding that so long as the employer honestly believes in the proffered reason for its action, then there is no pretext "even if the reasons are foolish or trivial or even baseless.").

Mr. Sikora asserts that Ms. Franz told him she selected Ms. Flannery and Ms. Link for the two Manager of Contracts positions because they had "high potential" and would do "a better job of managing change." Likewise, Ms. Link promoted Ms. Herbert based on an assessment of her qualifications. Regardless of whether these assessments were correct, Mr. Sikora hasn't shown that Ms. Franz's or Ms. Link's conclusions had no basis in fact or that their decisions were a cover-up for unlawful discrimination. *See* Balderston v. Fairbanks Morse Engine Div. of Coltec Indus., 328 F.3d 309, 323 (7th Cir. 2003) ("To show that an employer's proffered reason is pretextual, a plaintiff must do more than demonstrate that the employer made a mistake or that the employer's reason was

15

not good enough to support its decision."). Mr. Sikora hasn't produced evidence that Honeywell's pre-2005 decisions weren't in good faith, and as such, he hasn't carried his burden on his Title VII or ADEA claims. Accordingly, Honeywell is entitled to summary judgment on those claims.

## B. 2005 Reorganization Decisions

Mr. Sikora also claims that Honeywell discriminated against him based on his sex and/or age when he didn't receive a promotion to numerous positions for which he applied both within and outside the contracts department during the 2005 reorganization process. While Mr. Sikora mentioned approximately fourteen positions in his complaint, he references only four specific hiring decisions in his response in opposition to Honeywell's motion for summary judgment. Mr. Sikora's additional arguments are waived. *See* Roe-Midgett v. CC Servs., Inc., 512 F.3d 865, 876 (7th Cir. 2008) (holding that undeveloped argument constitutes waiver); Weinstein v. Schwartz, 422 F.3d 476, 477 n.1 (7th Cir. 2005) ("The failure to develop an argument constitutes a waiver."); Estate of Moreland v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument. Perfunctory or undeveloped arguments are waived.").

As for his remaining claims, Mr. Sikora may prove discrimination using either the direct or indirect methods of proof as previously described. *See* Kampmier v. Emeritus Corp., 472 F.3d 930, 939 (7th Cir. 2007); Phelan v. Cook

County, 463 F.3d 773, 779  (7th Cir. 2006). Mr. Sikora admits in his response in opposition to summary judgment that he doesn't have evidence "of the 'smoking gun' variety" to prove discriminatory treatment under the direct method and, instead, proceeds under the indirect method on his Title VII and ADEA claims.

With respect to Mr. Sikora's ADEA claims, the parties don't dispute the first three prongs of the prima facie test for age discrimination. Instead, Honeywell argues that Mr. Sikora hasn't presented evidence of a similarly situated individual who received more favorable treatment and was substantially younger than Mr. Sikora. *See* Fisher v. Wayne Dalton Corp., 139 F.3d 1137, 1141 (7th Cir. 1998) (clarifying that substantially younger "means at least a ten-year age difference; any age disparity less than ten years is 'presumptively insubstantial.'"). To prove that an individual is similarly situated in the context of a reduction in force, Mr. Sikora must "show at a minimum that the retained or transferred younger employees possessed analogous attributes, experience, education, and qualifications relevant to the positions sought . . . ." Radue v. Kimberly-Clark Corp., 219 F.3d at 618 (citations omitted) (holding that the plaintiff couldn't prove the fourth prong of a prima facie case of age discrimination without evidence of a meaningful comparison to younger employees who obtained the desired positions during a reduction in force).

Mr. Sikora urges the court to look at each hiring decision as a discrete act of discrimination, focusing on three specific positions for which hiring manager Mr. Trim appointed individuals who were younger than him. Mr. Trim filled two

open Contracts Director positions with Mr. Kotlarz, born in 1966, and Mr. Peak, born in 1961. Mr. Trim also appointed younger employees — Ms. Link and Mr. Sorber — to Director positions. None of these employees are similarly situated to Mr. Sikora. Mr. Trim worked on projects with Mr. Kotlarz and was impressed with his contract management abilities but did not share the same impression of Mr. Sikora's performance. Mr. Peak, Mr. Sorber, and Ms. Link reported directly to Mr. Trim, while Mr. Sikora did not. Mr. Trim believed Mr. Peak, Mr. Sorber, and Ms. Link to be "strong performers," but he felt that Mr. Sikora's skills weren't at the same level. Mr. Peak possessed legal training, but Mr. Sikora did not. Mr. Sikora hasn't demonstrated substantial similarity and cannot fulfill the elements necessary for a prima facie case of age discrimination.

With respect to Mr. Sikora's Title VII claims, the court applies a modified standard with regard to the first element of the prima case required to establish reverse sex discrimination. *See* Hague v. Thompson Dist. Co., 436 F.3d 816, 820 (7th Cir. 2006). Specifically, Mr. Sikora must "show background circumstances sufficient to demonstrate that the particular employer has 'reason or inclination to discriminate invidiously against [men]' or evidence that 'there is something fishy about the facts at hand.'" Id. (*quoting* Ineichen v. Ameritech, 410 F.3d 956, 959 (7th Cir. 2005)). Mr. Sikora points to Ms. Franz's and Ms. Link's hiring decisions, suggesting that they preferred to hire females. In 2003, for instance, Ms. Franz allowed Ms. Link and Ms. Flannery to continue in their Manager of Contracts positions but demoted Mr. Sikora even though he had more years of experience.

Mr. Sikora also contends that Ms. Link promoted less qualified females, including Ms. Herbert to the vacant Senior Contract Manager position in 2004 and Donna Synder and Dacrcelle Ioli to two of the three open Senior Contract Manager positions in 2005.[2]

Assuming that these circumstances create an inference of reverse discrimination sufficient to satisfy the modified first prong of the prima facie case, Mr. Sikora also must prove that Honeywell chose a similarly situated female over him for one of the 2005 reorganization positions. Mr. Sikora points only to Ms. Synder, contending that she received more favorable treatment, but he doesn't present evidence that she is similarly situated in all material respects. Ms. Link supervised both Ms. Synder and Mr. Sikora, but Ms. Synder worked in the Phoenix facility in close proximity to Ms. Link. Mr. Sikora, on the other hand, worked in South Bend, which Ms. Link believed had fallen behind the Arizona teams in terms of process improvements. In addition, Ms. Link considered Ms. Synder to be a stronger employee than Mr. Sikora in key performance areas, as evidenced by their respective evaluations. Based on their differing experience and qualifications, Mr. Sikora and Ms. Synder cannot be considered substantially similar individuals.

Even if Mr. Sikora could prove a prima facie case of either age or sex

---

[2] In response, Honeywell notes that Ms. Link also hired Jay Felkins, a male, for a Senior Contract Manager position in 2005, and that 24 out of the 30 successful applicants for the 2005 reorganization positions were male.

discrimination, Honeywell provided a legitimate nondiscriminatory explanation for not promoting him during the 2005 reorganization process, and Mr. Sikora hasn't shown that this reason was a pretext for unlawful discrimination. Honeywell claims that it didn't transfer Mr. Sikora to one of the available positions because other applicants were better qualified. Mr. Sikora may disagree with Honeywell's conclusions, but the court will not second-guess Honeywell's decisions absent a showing of pretext. *See* Gates v. Caterpillar, Inc., 513 F.3d 680, 689 (7th Cir. 2008) (noting that the court will not "sit as 'super-personnel' to question the wisdom or business judgment of employers"). Mr. Sikora provides evidence regarding the competing qualifications between himself and the successful applicants, but this evidence isn't so favorable to Mr. Sikora "that there can be no dispute among reasonable persons of impartial judgment that [he] was clearly better qualified for the position." Millbrook v. IBP, Inc., 280 F.3d 1169, 1180 (7th Cir. 2002); *see also* Mlynczak v. Bodman, 442 F.3d 1050, 1059 (7th Cir. 2006). Nothing in the record suggests that Honeywell's stated reasons for not promoting Mr. Sikora were fabrications. *See* Ineichen v. Ameritech, 410 F.3d at 961 (pretext inquiry must focus on whether the employer's stated reason is honest, not whether it was well-reasoned, wise or accurate). Absent such evidence, summary judgment is appropriate on Mr. Sikora's claims regarding the 2005 reorganization process.

*C. Termination Decision*

20

Mr. Sikora also argues that Honeywell eliminated his Contract Manager position and terminated him during the reorganization process because of his age and/or sex. With respect to his sex discrimination claim, Mr. Sikora again relies on evidence of Ms. Franz's and Ms. Link's employment decisions to argue that there is evidence of background circumstances tending to show that Honeywell preferred to hire and promote females at Mr. Sikora's expense. Mr. Sikora didn't try to satisfy the other prongs of his prima facie case; he didn't address Honeywell's contention that it retained all of the other male employees in Mr. Sikora's unit. Indeed, the only other individual terminated was Michelle Freeman, a female. *See* <u>Steinhauer v. DeGolier</u>, 359 F.3d 481, 484 (7th Cir. 2004) (holding that a male employee couldn't establish reverse sex discrimination where the male was replaced by another male and the executive director hired and fired both genders).

Mr. Sikora argues that he established a prima facie case that Honeywell terminated him because of his age by pointing to the five employees in his unit — each of whom was younger than Mr. Sikora — who weren't terminated during the reduction in force. Out of the seven individuals in Mr. Sikora's unit, Honeywell chose to retain Christopher Brookhart, Kyle Strong, Greg Madden, Ronnie Schaffroth, and Gary Held. Although Mr. Sikora points out that four of these individuals are substantially younger than him, he hasn't established that these individuals are similarly situated. To the contrary, Honeywell notes that Mr. Held is not substantially younger, Mr. Brookhart and Mr. Madden possessed law

degrees, and Mr. Strong had a reputation with hiring manager Mr. Trim as a "strong performer." Neither party provided information about Mr. Schaffroth's prior experience or qualifications. Based on this lack of similarity, Mr. Sikora hasn't fulfilled the elements necessary for a prima facie case of age discrimination.

Although Mr. Sikora hasn't carried his initial evidentiary burden under Title VII or the ADEA, Honeywell nonetheless gave a legitimate nondiscriminatory reason for terminating his employment. During the course of the 2005 reorganization and reduction in force, Honeywell asked Ms. Link and Mr. Peak to evaluate the employees under their supervision in order to eliminate two positions from their combined direct reports. Honeywell claims that Ms. Link and Mr. Peak reviewed each employee based on their skills and abilities and selected Ms. Freeman and Mr. Sikora as the weakest employees in the unit. Mr. Sikora tries to show that this evaluation was a pretext for unlawful discrimination in a number of ways. First, he argues that until Honeywell stopped providing overall performance rankings on its annual reviews, he received "exceeds standards" ratings, and any negative remarks from his supervisors could be explained by Honeywell's policy requiring managers to identify some areas as needing improvement. Next, Mr. Sikora argues that Mr. Peak wasn't his direct supervisor, so his evaluation wasn't based on a personal observation of Mr. Sikora's job performance. Mr. Sikora also states that his 2004 CIS contradicts the claim that he was one of the weakest employees in his unit based on its listing of his strong technical knowledge in contracts, ability to self-motivate, strong negotiation skills,

and highly developed analytical skills. Finally, Mr. Sikora notes that he received the highest ranking of any candidate on the resume scoring exercise.[3]

Information about Mr. Sikora's past performance alone doesn't constitute evidence of pretext. Instead, Mr. Sikora must prove that Honeywell's determination that Mr. Sikora was one of the weakest employees in his unit was a lie or had no basis in fact. *See* Testerman v. EDS Tech. Prods. Corp., 98 F.3d 297, 303 (7th Cir. 1996) (holding that plaintiffs must provide "evidence tending to prove that the employer's reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge."). Courts can't impose on employers their own ideas of what constitutes a prudent business decision; they "can assess only the question [of] whether an employer has taken an action for a forbidden reason." Leonberger v. Martin Marietta Materials, Inc., 231 F.3d 396, 399 (7th Cir. 1999). Mr. Sikora disagrees with Mr. Peak's and Ms. Link's assessment of his skills, but he hasn't produced any evidence to show that they didn't honestly believe in the reasons that led them to conclude that he was one of the weakest employees. *See* Sirvidas v. Commonwealth Edison Co., 60 F.3d 375, 378 (7th Cir. 1995) ("The question is not whether Sirvidas was or was not performing satisfactorily but whether ComEd honestly believed that Sirvidas was the weakest member of the department.").

---

[3] Honeywell disputes the significance of this evidence, arguing that the resume scoring exercise was used in the course of identifying individuals for interviews for Senior Contract Manager and Contract Manager positions, not for the purposes of terminating employees in connection with the reduction in force. Regardless, this evidence isn't sufficient to establish pretext.

Further, Mr. Sikora doesn't address that the only other employee terminated, Ms. Freeman, was both younger and female.

Mr. Sikora hasn't presented sufficient evidence of discriminatory motivation to create a genuine issue of material fact for trial, and Honeywell is entitled to summary judgment on his claims relating to his termination.


III. Conclusion

For the foregoing reasons, the court GRANTS the defendant's motion for summary judgment. [Doc. No. 43]. The clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED: July 11, 2008

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court